[Civ. No. 6322. Third Appellate District.—February 8, 1940.]

FLOYD M. HINSHAW, as Executor, etc., et al., Appellants, v. MABEL A. HOPKINS, Respondent.

Alfred E. Cate for Appellants.

H. Sidney Laughlin for Respondent.

SCHOTTKY, J., *pro tem.*—This action was commenced by Floyd M. Hinshaw and Helen M. DeGroot, as executors of the will of Alice L. Dornberger, deceased, and Helen M. DeGroot, as an individual, against Mabel A. Hopkins, to set aside and declare void a deed from said deceased to said Mabel A. Hopkins, and to quiet title to the propery described therein.

According to the complaint, Alice L. Dornberger employed Floyd M. Hinshaw, a notary public, to prepare a deed of the real property here in dispute, to be executed by herself in favor of Mabel A. Hopkins, and that thereafter said Floyd M. Hinshaw prepared the deed, and on or about the 29th day of June, 1935, the deed was executed by Alice L. Dornberger. The complaint further alleged that at the time of the execution of said deed, the said Alice L. Dornberger was suffering with malignant cancer, and told the said Floyd M. Hinshaw that she did not expect to live, and that she desired to deed the said real property to Mabel A. Hopkins in the event she died, but in the event she got well she wanted the real property for herself; that at the request of Alice L. Dornberger, Hinshaw took her acknowledgment, whereupon she immediately handed the deed to Hinshaw, instructing him to keep the deed, and in the event of her death to record it, but in the event she got well to return it to her, so that she might destroy the same. The complaint further alleged that said Floyd M. Hinshaw thereupon took the deed into his possession and kept the same in his possession until the day after the death of the said Alice L. Dornberger, when he recorded the deed in the office of the county recorder. The complaint further al-

leged that the deed was void for the reason that it was not unconditionally delivered to the grantee during the lifetime of said Alice L. Dornberger, and for the further reason that said deed was testamentary in character.

The answer of defendant denied that the said deceased Alice L. Dornberger had at any time informed Floyd M. Hinshaw that in the event that she got well that he was to return the deed to her, so that she might destroy the same, and alleged that said Alice L. Dornberger had instructed said Floyd M. Hinshaw to draw a deed by which she, as grantor, would convey to defendant, as grantee, the real property in question, and further instructed said Hinshaw that he was to hold the deed during her lifetime, and at her death to immediately deliver the same to defendant, or record the same for the defendant.

It appears from the evidence that Mrs. Alice L. Dornberger was a woman past middle age, and was living upon the property here in dispute. She was divorced and lived alone. She had a grown married daughter and two grandchildren. The respondent, Mabel A. Hopkins, for almost nine years before the commencement of the action, had been employed as a housekeeper by deceased, and lived with her husband, Frank Hopkins, in a small house in the rear of the same property. About seven years prior to her death, Mrs. Dornberger had undergone an operation for cancer, and about six months prior to her death she became ill and consulted a physician, who informed her that she had cancer and would probably not live more than six months. She consulted a number of physicians thereafter, and underwent treatment of various kinds up to the time of death.

It appears that Mrs. Hopkins, the respondent, had performed many services for Mrs. Dornberger and Mrs. Dornberger felt very kindly towards her, and that after Mrs. Dornberger had been told by her physician that she would probably not live for more than six months she told a number of people, including Mrs. Nellie Hinshaw, the wife of Floyd M. Hinshaw, that she was going to deed the home property to Mrs. Hopkins. About June 24 or 25, 1935, Mrs. Dornberger was at the home of Mr. and Mrs. Floyd Hinshaw, where she visited frequently and with whom her relations were very friendly, and requested Mr. Hinshaw, who was an attorney at law, as well as a notary public, to prepare a deed of the

property in litigation to Mrs. Hopkins. No one else was present at said conversation, as Mrs. Hinshaw was in the kitchen preparing the evening meal, to which Mrs. Dornberger was invited. The testimony of Floyd H. Hinshaw as to what was said by Mrs. Dornberger is as follows:

"After general discussion Mrs. Dornberger said to me, 'Floyd, I wish you would prepare a deed covering the property in which I live. I want to deed that to Mabel Hopkins.' . . .

"I then said, 'Alice, this is not the proper way to give Mrs. Hopkins this property. You should do it by will.'

"Mrs. Dornberger replied, as nearly as I can remember her language, that it was her desire that Mrs. Hopkins have possession of the property upon her death, and that the delay which would be brought about by the probating of the will, and that also she wanted to save Mrs. Hopkins inheritance tax fees on the property; so she said, 'I want to do it by deed.'

"So I told her I would prepare the deed and let her know when it was ready for her signature. She said, 'Now. this deed is to be retained by you until after my death; on my death I want you to record it. But,' she says, 'in the event I get well I want you to return the deed in order that I may destroy it.' She said, 'You know that the doctors have told me that I haven't much longer to live, and that I better put my house in order,' I believe was the way she put it, 'but', she said, 'I think I am going to get well, so I want you to retain possession of the deed at all times until after I have passed away.'

"The deed was prepared at that time, and a day or so afterwards I called Mrs. Dornberger on the phone and told her the deed was ready for her to sign, and she said well, she wasn't feeling very well, and that we would let the matter rest until I heard from her again.

"On the afternoon of June 29, 1935, Mrs. Dornberger telephoned me, asking me if the deed was ready. I told her that it was. She asked me if I would drive by her home that evening and bring the deed with me in order that she might sign it. So I drove by her home that evening, arriving at her home at 3969 South Budlong Avenue about 5:30, and went in and gave her the deed to read. There was no one present but she and I, and she read the deed and signed it, and asked me as a Notary Public to acknowledge her signature;

and then after signing the deed Mrs. Dornberger handed it back to me. 'Now', she said, 'Floyd, I wish you would take this deed and put it in your safe deposit box or your safe, or some place where it will be in safe keeping. And under no circumstances would I want you to lose possession of this deed, because if I get well I want it returned to me in order that I may destroy the deed.'

"So I acknowledged the deed and placed it in the safe in my office where it remained until the day after Mrs. Dornberger's death.

"Mrs. Dornberger died on September 19th last. At about 3.00 o'clock in the afternoon of September 20th I was coming to the City Hall on another matter, and I took the deed out of the safe and brought it to the office of the County Recorder and recorded the deed, having placed on the back of the deed the name of Mabel A. Hopkins, 3969 South Budlong Avenue, Los Angeles, California, as being the person to mail the instrument to upon recordation."

As already stated, Floyd M. Hinshaw was the only witness as to what was said by Mrs. Dornberger at the time she gave him instructions to prepare the deed, and also at the time she executed and acknowledged the deed and delivered it to him for safekeeping.

Respondent called six witnesses, all of whom were close friends of Mrs. Dornberger, and a fair summary of the testimony of these witnesses is that beginning about the month of April when she left Doctor Schwuchow's office, Mrs. Dornberger told them that she realized she did not have long to live, and that she wanted Mrs. Hopkins to have her home property, and was going to deed it to her. After the execution of the deed she told several of the witnesses that she had deeded the property to Mabel Hopkins and that it would be Mrs. Hopkins' upon her death.

On September 3, 1935, at the request of Mrs. Dornberger, Floyd M. Hinshaw prepared her will, which was signed by her on that date. In that will no mention was made of the real property described in the deed to respondent, although Mrs. Dornberger specifically devised her only other parcel of real property to her daughter, Mrs. DeGroot, and her two grandchildren, and bequeathed to Mabel A. Hopkins, respondent, all furniture located in the home at 3969 South Budlong Avenue, not otherwise disposed of by the will. Floyd Hin-

shaw testified that at the time the will was prepared there was no discussion about the Budlong Avenue property, even though there was no residuary clause in the will. The will named appellants, Floyd M. Hinshaw and Helen M. DeGroot, coexecutors.

Mrs. Dornberger died on September 19, 1935, and the deed was recorded by Hinshaw on September 20, 1935. Respondent testified that she phoned Hinshaw on September 20, 1935, and asked him if he had recorded the deed, and that Hinshaw told her, ''I have just come in from having recorded it. Now, Mabel, you have the same equity in that property that Alice had.'' Hinshaw denied that respondent phoned him, but Mrs. Hinshaw testified that respondent phoned her on the 20th asking her to have Mr. Hinshaw keep his promise to record the deed, and that she phoned Mr. Hinshaw and told him of respondent's call, and that about 3 P. M. he phoned her and told her he had recorded the deed and that she then phoned respondent and told her the deed had been recorded.

The inventory and appraisement in the estate of Alice Dornberger was introduced in evidence. The affidavit that it contained a true statement of all the assets of the estate was sworn to by appellant Helen M. DeGroot, executrix, before appellant Floyd M. Hinshaw as notary public on November 30, 1935, and the Budlong Avenue property described in the deed was not listed among the assets of the estate, said estate being appraised at more than $48,000. The household furniture of deceased, which was located in the home of deceased, and which was bequeathed by the will to respondent was listed in the inventory, and was appraised at $850.

The trial court found in brief that on or about June 24, 1936, Alice L. Dornberger employed Floyd M. Hinshaw, a notary public, to prepare a deed of her home property to Mabel A. Hopkins, a married woman, which deed was prepared by said Floyd M. Hinshaw and presented to Alice L. Dornberger on June 29, 1935, for signature and was executed by her on said date; that on said 24th and 29th days of June, 1935, the said Floyd M. Hinshaw was a duly licensed and practicing attorney in the State of California and the attorney for the said Alice L. Dornberger.

The court further found that at the time of the execution of said deed Alice L. Dornberger was suffering from malignant cancer and on several occasions and prior to and subse-

quent to June 29, 1935, was informed by her physicians that she was afflicted with a malignant cancer of the lung involving the heart and could not recover; and she knew from April, 1935, that she was afflicted with a malignant cancer of the lung and could not recover and that the extreme duration of her life was not over six months.

The court also found that the deed was not void for the reason that said deed was not unconditionally delivered to the grantee during the lifetime of said Alice L. Dornberger or that said deed is testamentary in character, and also that the document was delivered with the intention to divest herself of the fee title to said property and to release all control and domination over said property and that it was not her intention to reserve unto herself any power to recall or modify said deed but it was her intention to and she did reserve only a life estate in and to said property.

In accordance with these findings, the trial court ordered judgment in favor of the defendant and against the plaintiffs, and that the defendant Mabel A. Hopkins was the absolute owner of the fee of said real property, free and clear of any right, title or interest of the plaintiffs in said action.

Judgment was accordingly entered and this appeal is from said judgment.

Appellants devote some fifty pages of their opening brief to pointing out what they claim to be contradictions and inconsistencies in the testimony of defendant's witnesses, and then make the following statement:

"The sole question for determination by this Court is whether there is testimony that is fairly and reasonably deducible from the evidence that supports the finding that the delivery of the deed was unconditional.

"Mr. Hinshaw was the only person besides the decedent who was present at the time of the delivery of the deed, and he says the delivery of the deed to him was expressly subject to recall. His testimony was unimpeached.

"The only possible contradiction to his testimony would be by inferences drawn by the Court from declarations of the grantor, her physical and mental condition, and her actions around and about the time of the execution of the deed."

It would appear at the outset that the chief question involved upon this appeal is whether or not there was a delivery of the deed in question sufficient to pass title to respondent

upon the recordation of the deed after the death of Alice L. Dornberger. Respondent contends that the grantor intended to, and did, upon the delivery of the deed in question to Hinshaw, part with all dominion over the deed and all power to recall it, and that such delivery to Hinshaw was a valid present delivery to respondent Mabel A. Hopkins.

█ It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title. The solution of this question is grounded entirely on the intention of the grantor, and this is a question of fact to be determined by the trial court from a consideration of all the evidence in the case bearing upon the question.

In *Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462], the court said:

"It has long, if not always, been the rule that the delivery of an instrument is a question of intent, and that to a complete delivery no precise form of words and no particular character of act is necessary. The delivery is sufficient and complete if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it may presently vest title in another. 'The delivery,' says Touchstone, 'is either actual, i. e., by doing something and saying nothing; or else verbal, i. e., by saying something and doing nothing, or it may be both; and either of these may make a good delivery and a perfect deed.' (1 Shep. Touch. 57.) This principle is recognized and expressed in all the cases. . . . ''

█ In the case at bar the court below found that it was the intention of Alice L. Dornberger to deliver, and that she did deliver, a deed of the property to respondent, and that it was her intention to divest herself of all control and dominion over said property, and that it was not her intention to reserve unto herself any power to recall or modify said deed, but to reserve only to herself a life estate in said property.

Appellants contend that there was no evidence sufficient to overcome what appellants claim was the definite, unimpeached testimony of Floyd M. Hinshaw that the delivery was conditional.

The question then presents itself as to how far the testimony of Floyd M. Hinshaw that the delivery of the deed was

conditional was binding upon the trial court. In view of the fact that Hinshaw was the only witness who could testify as to the instructions given him by Mrs. Dornberger when he received the deed into his possession, was the court below justified in finding contrary to his testimony?

One of the leading cases in California upon this point is the case of *Davis* v. *Judson,* 159 Cal. 121, where the court said at pages 128, 130 [113 Pac. 147]:

"It is insisted by appellants that this testimony of Wilson stood uncontradicted and that the court had no right arbitrarily to reject it and find to the contrary.

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy. . . .

"So that, within the rule as we have stated, while the trial court had the statement of Wilson that he was sure that he had obtained a deed from the trustees, and although there was no direct testimony impeaching him or contradicting his statement, still the conduct of Wilson, as disclosed by his other testimony and the other circumstances in evidence, were such that the court had a right to conclude that they were inconsistent with the execution of any conveyance to Wilson, and warranted the rejecting as improbable his statement that such a conveyance had been made. (*Blankman* v. *Vallejo,* 15 Cal. [638], 645; *Baker* v. *Fireman's Fund Ins. Co.,* 79 Cal. 41 [21 Pac. 357]; *Chico Bridge Co.* v. *Sacramento Tr. Co.,* 123 Cal. [178], 184 [55 Pac. 780].)"

To the same effect see: *Blanc* v. *Connor*, 167 Cal. 719, 722 [141 Pac. 217]; *Cox* v. *Schnerr*, 172 Cal. 371, 379 [156 Pac. 509]; *Belser* v. *American Trust Co.*, 125 Cal. 344, 347 [13 Pac. (2d) 951]; *Davis* v. *Judson*, 159 Cal. 121 [113 Pac. 147].

In the case of *Whitaker* v. *Whitaker*, 137 Cal. App. 396, the court said at page 401 [30 Pac. (2d) 538]:

"(6) The rule that the uncontradicted testimony of a witness cannot be disregarded is subject to the limitation that the trial court or jury may discard such testimony when the surrounding circumstances of the case afford probable justification for such action."

Applying the test of these authorities to the testimony of appellant, Floyd M. Hinshaw, we believe that it cannot be said that "there are no matters or circumstances which at all impair its accuracy".

Hinshaw testified that at the time Mrs. Dornberger requested him to make the deed, he told her not to make the deed, but to provide for respondent by will. He further testified that when he received the deed from Mrs. Dornberger he placed it in an envelope, and put it in his safe; that the only notation or memorandum he made was to write on the envelope "Alice L. Dornberger, Deed", and to place with the deed a memorandum "To be recorded upon the death of Alice L. Dornberger." He further testified that he drew Mrs. Dornberger's will on September 3, 1935, and that although he believed the deed previously made was invalid, he made no reference to it when the will was drawn, and no mention of her home property was made in the will, although the only other parcel of real property that Alice L. Dornberger owned was specifically devised, and although the furniture in the home property was specifically bequeathed to respondent. He further testified that the day after the death of Alice L. Dornberger he placed the deed in question on record, although he believed the deed to be invalid, and although he had been named as coexecutor of the will of Mrs. Dornberger. He further testified that, in preparing the inventory and appraisement in Mrs. Dornberger's estate, he did not list the home property as an asset of the estate.

We believe that the trial court, under the rule of the cases cited, had the right to conclude that he was in error in his testimony as to the instructions that Mrs. Dornberger gave

him with reference to the deed in question in so far as the attaching of any conditions to its delivery was concerned.

■ There seems to have been no question about the desire of Mrs. Dornberger that respondent have the home property. Even appellants concede that, although they, of course, assert, that "she legally failed to grant and convey it to her". The declarations of Mrs. Dornberger made before the signing of the deed show her intention to deed the property to respondent. Her declarations made after the signing of the deed were to the effect that she had made a deed and had given the property to respondent. Such declarations are admissible as bearing on the question of delivery and support the finding of the trial court that Mrs. Dornberger intended to and did deliver a deed of said real property to respondent, and that it was not her intention to reserve any power to recall or modify said deed.

It seems to be the settled law in California that in a case where the thing in issue is whether or not the grantor has parted with title, the declarations of the grantor made prior to, at the time of, and subsequent to the making of the deed, are admissible.

In the case of *Williams* v. *Kidd*, 170 Cal. 631, the court said at page 648 [151 Pac. 1, Ann. Cas. 1916E, 703] :

"But here the very question was whether Williams had ever parted with title to the property. This was the main issue in the case, the claim of respondents being that there had been no delivery of the deed with intent on the part of Williams to do so. The conduct and declarations of Williams covered a period subsequent to the making of the deed and while Kidd held it as a depositary, and we are satisfied that such acts, conduct, and declarations of Williams with reference to the property during that period were properly admissible as bearing on the issue as to whether there had been a delivery of the deed."

In the case of *Fisher* v. *Oliver*, 174 Cal. 781, the court said at page 788 [164 Pac. 800] :

" . . . , when the very question in issue is whether the grantor has parted with title and whether in fact he has delivered his deed to this end, evidence of his acts, including herein his declarations after the time when it is contended he had so parted with title, is admissible and of great weight in the determination of this question."

To the same effect are *Sprague* v. *Walton*, 145 Cal. 228 [78 Pac. 645], and *Belser* v. *American Trust Co., supra.*

■ It is the exclusive function of the trial court to weigh the evidence and determine the credibility of the witnesses. An appellate court will not disturb the findings of the trial court when there is a substantial conflict in the evidence on material points, and when there is some evidence to support the findings. The record in this case shows a substantial conflict in the evidence, and there is ample evidence to sustain the judgment.

In view of the foregoing, the judgment should be and is affirmed.

Tuttle, J., and Pullen, P. J., concurred.