[Civ. No. 3189.   Fourth Dist.   Mar. 12, 1946.]

ETTA DYKES, Appellant, v. LEROY DYKES, Respondent.

Ralph Robinson for Appellant.

Laurence B. Myers for Respondent.

GRIFFIN, J.—Plaintiff brought this action to quiet title to certain described real property.  Plaintiff and defendant, as husband and wife, purchased, in the name of defendant, on written contract dated February 10, 1940, from one Papagni and wife, property in Fresno, for the total sum of $1,500. The down payment of $150, cost of improvements, and payments on the contract were made with community funds, mainly from rentals derived from two apartments later built on the two lots in the rear of the main building.

On January 29, 1942, while there was matrimonial discord between them, a written agreement was entered into.   It provided generally that Mr. Dykes would collect all rents from the buildings and use all money so collected in the payment

of incumbrances against the property; that all payments would be made in the names of and for the benefit and credit of both parties. It provided for an accounting upon demand, and that the agreement was "not intended to be a release of the property rights or equity from either party unto the other, but solely an agreement for the preservation of the community property rights of both." The parties accepted it. Leroy Dykes subsequently secured a divorce from plaintiff. Neither the interlocutory nor the final decree made mention of the property herein described.

On May 16, 1942, Leroy Dykes signed his name to a document reading as follows:

"May 16, 1942.

"This is to certify that I Leroy Dykes have agreed with Pete Papagni, that I have purchaced a home from Pete Papagni and hereby realise all of my interest in it because I am unable to continuate the payments. I do not wan't anything for my equedity.

"Leroy, Dykes

Witness:

"Morris Cocola

"Josephine Cocola."

The trial court found that Leroy Dykes was an illiterate person and that when he signed the document above quoted he could not read, write or understand intelligently; that he was unable to read it and did not understand the meaning or import of the words; that it was not explained to him; that he was told by Pete Papagni, and so believed, that the only purpose of said document was to place upon Etta Dykes the responsibility and obligation to collect the rents from the property and to pay them to Papagni as payments on the contract, and to pay the necessary expenses of maintenance; that Leroy Dykes was not told that he was conveying his interest in the premises; that he believed said statements and relied upon them, not knowing the contents thereof; that after the separation, Mrs. Dykes did collect the rents and paid them to Papagni; that the revenue was sufficient to pay all installments, interest, taxes and insurance when due; and that the property had a rental value of $84 per month; that there was never any accounting had between the parties; that the improvements to the property and rents were applied for the benefit of both parties; that each still retained his and her respective one-half undivided interest therein; that the prop-

erty could not be partitioned; that a sale should be ordered by three named appraisers and referees and that each party have a one-half interest in the proceeds after the payment of the balance due on the purchase price and payment of required fees and expenses of sale. Judgment was rendered accordingly. Plaintiff appealed, not upon the reporter's transcript, but upon a record prepared in accordance with rule 7 of the Rules on Appeal.

It is the contention of plaintiff that the evidence does not sustain the findings and judgment in respect to the claimed relinquishment of right in the contract of purchase allegedly signed by Leroy Dykes. He admits his signature to the document but claims he signed it through false representations. It is true that there is evidence that at the time Leroy Dykes signed the instrument he was in arrears on payments on the contract and at that time Mrs. Dykes took possession of the property. The amended settled statement on appeal, signed by the trial judge, recites that the testimony at the trial was not all reported; that Dykes, during the trial, testified that he could neither read nor write and was unable to read the document and did not understand the meaning of the words; that he did not intend to assign his interest in the property back to Papagni; that Papagni, although ill at the time of trial, testified that Dykes told him he wanted to give up the place; that it was stipulated that Morris Cocola, if called as a witness, would testify that he prepared the document at Leroy Dykes' request; that Leroy did not live on the place nor visit it after May 16, 1942; that the testimony "of Etta Dykes was highly contradictive, and at great variance during the time she testified to the facts"; that Leroy Dykes testified that Etta Dykes had not been making the payments to Papagni although the premises had been rented, and that the rents had been collected by her during that time; that the rentals received were more than ample to meet all payments; that Leroy Dykes discussed the matter of delinquent payments with Papagni and that Papagni told him, when he signed the document presented by Papagni (the so-called relinquishment) that the document was to place upon Etta Dykes the responsibility and obligation to collect the rents and make the payments to Papagni under the contract, together with other operating expenses; that he believed those statements and that otherwise he would not have signed it.

The amended statement of facts further recites that the

trial judge stated, from the bench, after the evidence was all in, that in arriving at his decision, it was his position that the "waiver agreement was a void agreement for the reason that he was satisfied from the evidence that Leroy Dykes did not know what he had signed." A motion for new trial was made and several affidavits of individuals were presented endeavoring to show that Leroy Dykes had made statements which would indicate that he believed he had waived his interest therein. The statements were denied by Dykes in his affidavit. The motion was denied.

Several days of trial were consumed in determining the issues presented. Those same issues, here in dispute, were again considered by the trial court on the motion for new trial. The entire evidence on the subject is not available to us on appeal. Since the appeal was perfected, on motion, this court allowed an augmentation of the record. It consisted of a copy of the translation of the reporter's notes of the testimony of Doris Convillion. A reporter was not used after the first day's trial. According to this evidence, the witness testified that she knew both Mr. and Mrs. Dykes for several years; that she discussed the question of the property herein involved with both parties; that Mrs. Dykes asked her about finding her a good lawyer because she wanted to get the property for herself; that Mrs. Dykes stated, after their separation, that she was to collect rentals and apply them on the contract price; that for some reason the rentals had not been collected and that Mr. Papagni and Leroy Dykes came to her place to see Mrs. Dykes about it; that all parties discussed the matter in each other's presence and in the presence of Mrs. Dykes; that it was suggested and "they wrote a piece of " paper "that Leroy Dykes would turn all the books and papers over to and let Etta collect all the rents and make the payments on the property"; that Mr. Papagni wrote something out "in pencil" and that she read it and it said: "I, Leroy Dykes, decide and turn the property books over to Etta Dykes" and "to collect the payments and make the payments"; that Etta did not sign it but agreed to comply; that Leroy did sign some paper at that time "in pencil"; that Mr. Dykes stated that at all times he wanted to divide the property equally when it was sold, or suggested, as an alternative, that one might "buy the other out." A photostatic copy of the claimed relinquishment makes it appear that it was written and signed in ink. It is true that the evidence was, to say the least,

confusing, but it likewise appears to be conflicting. The trial court had the opportunity of observing the witnesses and to better evaluate the weight to be given their testimony.

From the settled statement on appeal and from an examination of the entire record, it appears to us that the question presented was one of fact for the determination of the trial court. It cannot be said that there was no substantial evidence supporting the finding that the defendant was deceived and was fraudulently induced into signing the claimed relinquishment by a fraudulent representation, even though the evidence might well have supported a contrary finding. (Civ. Code, § 1572; *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509]; *Hinshaw* v. *Hopkins,* 37 Cal.App.2d 230 [99 P.2d 283].) Under these circumstances, where there is substantial evidence to support the finding, the decision of the trial court is final. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.