[Civ. No. 13528. First Dist., Div. One. Nov. 21, 1947.]

Estate of ELSIE HOBART, Deceased. EGERIA HOBART TAFT, Appellant, v. BERTHA HAGIST et al., Respondents.

Geo. K. Ford for Appellant.

John L. Reith for Respondents.

WARD, J.—This is an appeal from a portion of a decree determining heirship, wherein it was ordered and adjudged that all of the property described in the inventory and appraisement in the estate of Elsie Hobart, deceased, be distributed to Bertha Hagist, the mother of Elsie Hobart, except a small sum in cash which was distributed to Egeria Hobart Taft, a sister of the deceased husband of Elsie Hobart. Egeria Hobart Taft, the claimant in the heirship proceedings, is the appellant herein. The main question to be decided is the correctness of the court's construction of Probate Code, section 229.

The petition for letters of administration filed by Edward F. Hagist sets forth "That Elsie Hobart, also known as Elsie Vogel Hobart, . . . died on the 26th of August, 1945 . . .; that deceased left estate . . . consisting of real and personal property." Bertha Hagist was named the only heir. Two brothers and one sister were named as relatives. The petitioner, one of the brothers of the deceased, was appointed administrator of the estate.

The statement of claim of heirship alleged that "a true and correct inventory and appraisement" had been filed by the administrator and "That said Egeria Hobart Taft was and is a sister of Melmouth F. Hobart, who was the pre-deceased husband of said Elsie Hobart, the above named decedent; that said pre-deceased spouse of said decedent at the time of death of said decedent left him surviving no issue, no parent and no brother, sister, niece or nephew, excepting said Egeria Hobart Taft, only surviving sister,

and claimant above named; that said Elsie Hobart, decedent herein, left her surviving no spouse, and no issue and that her estate was partially community property of said deceased and said pre-deceased spouse and belonged to or went to said decedent by virtue of its community character on the death of said pre-deceased spouse or came to the decedent from said pre-deceased spouse by gift, descent, devise or bequest, or became vested in said decedent on the death of said predeceased spouse by right of survivorship in a homestead or in a joint tenancy between such predeceased spouse and the said decedent or was separate property of said predeceased spouse and came to said decedent from such predeceased spouse by gift, descent, devise or bequest."

The property of the estate consisted of cash, securities and real estate. By consent of the parties the cash was divided equally between the claimant and the respondent Bertha Hagist. The court found that securities should be distributed to the same respondent. The court also found that certain real estate was the separate property of Fred Hobart prior to his marriage to Elsie and was conveyed to her thereafter as sole grantee and that there was a good and valuable consideration for the particular conveyances and that none of it came to Elsie Hobart in the manner and method described in Probate Code, section 229. Other listed properties were found to be without the purview of the same probate section because of an insufficiency of evidence to uphold the claim of the sister of the deceased husband. Finally, as to two items, it was found that the property was the separate property of Elsie Hobart and did not come to her through Fred Hobart, whose full name was Melmouth Frederick Hobart.

The burden of establishing a claim of heirship under section 229 is placed upon the claimant. (*Estate of Beaty*, 27 Cal.App.2d 745 [81 P.2d 1002]. A narration of the relationship of the parties appears in the following summary of the testimony of Bertha Hagist, the mother and heir of the decedent, Elsie Vogel Hobart. The witness first met Fred Hobart and his first wife 10 or 15 years previous to the trial. The back yards of the Hobart and Hagist houses were adjoining. Her daughter Elsie lived with her husband, Art Vogel, and the families were very friendly. When Fred Hobart's first wife was sick, Elsie took care of her. She died approximately 10 years ago. After her death Fred Hobart became sick, and Elsie's first husband told her, "Take care

of him, he is alone." Fred Hobart lived alone in his house, with Elsie taking care of him; this arrangement lasted for about two years. Fred Hobart then moved in with Art and Elsie Vogel. Art Vogel died in 1938. Fred Hobart continued living in the Vogel home, with Elsie caring for him. Fred and Elsie were married in July, 1939. The following is from the transcript of the testimony of Bertha Hagist: "Q. . . . Why did he want Elsie to have the property? A. She should have the property because he didn't have nothing to do with his sister, that is what he said to me. Q. Anything else? A. He says that she didn't treat him right, she wasn't all right, she was—I can't say the word. Q. You can't say the word? A. No. He was just against her, wouldn't talk to her. Q. Well, how many conversations do you think you heard about property matters? A. Oh, many, you know, on a couple of times when I just came in, that they were talking. . . . Yes, he said nobody did so much for him than she did and for his wife, the first wife, yes." Edward F. Hagist supplemented his mother's testimony in relation to the location of the respective homes, the illness of Hobart's first wife and the subsequent condition of Fred Hobart. He testified: "Fred said he had— well, he did say definitely he had everything taken care of to go to Elsie and that she would have no trouble and would avoid certain fees and court appearances, I believe is what they meant, that he wanted her to have everything he had, since there was no other people on earth that took care of Fred as Elsie and Art while he was living, and he would take care of the will before he was ever married to Elsie. . . . Well, there was the family discussed at times and he stated had he not married Elsie he would have bequeathed everything to the Mason's Home. . . . We often asked about family affairs and at that time he hadn't seen or heard anything for about 17 years, 15 or 17 years, of his nearest relation besides his wife. He did receive two letters and he kept them and showed them and we asked him, 'Well, why don't you answer them?' and he says, 'No, I will wait a few days,' and he waited a few days and he said no, and threw it down and said, 'I wouldn't answer it,' and he did not answer it."

 It was agreed by the respective parties as to history and dates of transfer, that all of the securities should be considered in accordance with the evidence in reference to certain shares of preferred stock of the Pacific Gas and Electric

Company. The evidence discloses that prior to 1931, the securities stood in the name of Fred Hobart. In 1931, they were reissued in the names of Fred Hobart and his first wife, Elena Hobart, as joint tenants. Approximately a month after Elena's death, in March of 1937, they were reissued in the name of Fred Hobart. Subsequently Fred Hobart married Elsie Vogel. In October, 1937, approximately 20 months prior to the marriage of Fred and Elsie, they were reissued in the names of Fred Hobart and Elsie Vogel as joint tenants. After the marriage they were reissued in the names of Fred Hobart and Elsie Hobart. Fred Hobart died. On July 26, 1943, approximately two years before Elsie's death they were reissued in the name of Elsie Hobart. The court found ''that these Securities were issued to Fred Hobart and Elsie Vogel, as joint tenants, more than twenty months before they were married, and are therefore not affected by Section 229 of the California Probate Code; that the reissuance of said Securities from Fred Hobart and Elsie Vogel, as joint tenants, to Fred Hobart and Elsie Hobart, as joint Tenants, on August 15, 1939, was a re-issuance of said Securities from the holders thereof to themselves, the only change being in the name of Elsie Vogel being changed to Elsie Hobart, her new married name. The Court finds that said Securities should be distributed to Respondent.''

''If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation.'' (Prob. Code, § 229.) The origin or source of the property determines its distribution (*Estate of Abdale*, 28 Cal.2d 587 [170 P.2d 918]; *Estate of Rattray*, 13 Cal.2d 702 [91 P.2d 1042]; *Estate of Taitmeyer*, 60 Cal.App.2d 699 [141 P.2d 504]) if section 229 is applicable as the basis of the order. Section 229 does not cover a transfer for a consideration. If there is a consideration exchanged for the transfer, then that portion

of the property so obtained did not come to the deceased spouse "by gift, descent, devise or bequest." Homestead proceedings or joint tenancy are not involved in the distribution of the real estate. The section does not refer to transfers between parties who are not spouses. ▇ Courts are not permitted to supply words which do not appear in the statute (50 Am.Jur., § 234) in order to rule in accord with the contentions of a litigant. ▇ Plaintiff proved that the securities originally stood in the name of Melmouth F. Hobart (Fred Hobart) and that they stood in his name at the time that there was a transfer of certificates to Hobart and Elsie Vogel. Elsie Vogel's interest as a joint tenant was complete though the interest in the joint tenancy may have been a gift. If Elsie Vogel had changed her name by marriage to someone other than Fred Hobart, her interest as a joint tenant would have continued if Fred Hobart had caused the stock to be reissued in his name and the newly adopted or acquired name of the former Elsie Vogel no greater title or less interest would have been conveyed to Elsie. The reissuance of the stock under such circumstances would be only a confirmation of the previous transfer to joint tenancy and perhaps a convenience as notice to the stock issuing corporations. Likewise, the transfer in joint tenancy of the certificates in the names of Fred Hobart and Elsie Hobart after she became the wife of Fred Hobart added nothing to the validity of the previous transfer. The interest vested in Elsie through the previous joint tenancy transfer could not be destroyed by a second transfer to the same parties under another name. ▇ Upon the death of Fred Hobart, his wife, Elsie Hobart, in view of the facts of this case, did not become the sole owner of the joint tenancy interest in the securities by descent but by survivorship in the original grant creating the tenancy. (7 Cal.Jur. 334-335.)

Appellant cites Civil Code, section 683 on the subject of joint interest. "A joint interest is one owned by two or more persons in equal shares, by a title created by a single . . . transfer, when expressly declared . . . to be a joint tenancy . . . from a husband and wife when holding title as community property or otherwise to themselves . . . when expressly declared in the transfer to be a joint tenancy. . . ." The use of the word "otherwise" relates to a holding of title otherwise than as community property, in the sense that joint tenancy is otherwise than community property; however, it does not follow that any change results from a trans-

fer from a husband and wife of property held in joint tenancy to themselves in joint tenancy.

The answer to appellant's contention on the joint tenancy, assuming that Elsie obtained her interest as a gift, is that the gift was not made from one spouse to the other but from one unmarried person to another. So far as the evidence discloses the joint tenancy transfer was not made in contemplation of wedlock.

Appellant contends that the trial court erred in awarding the real property formerly owned by Fred Hobart to Elsie Hobart's heir, Bertha Hagist, the respondent herein. There does not seem to be any claim that the particular parcels of property declared to be the separate property of Elsie Hobart prior to her marriage to Fred Hobart were not in fact her separate property. These items may be passed without further comment.

As in the claim for the securities, so in the claim for the real estate, the burden of proof rested with the appellant. On appeal appellant merely mentions that the brother of Elsie Hobart testified that Fred Hobart stated the deed was made to Elsie to avoid probate proceedings. Appellant claims this was the only evidence produced upon the subject, and that under such circumstances the property should be awarded to the sister of the predeceased husband. These particular deeds and the contents thereof appeared from the records of the county recorder's office and were marked as exhibits in the case. The statement of Fred Hobart does not negative the issue of consideration. In the absence of further proof by appellant, the personal care and nursing given by the wife prior to her marriage, language used in the deed and the internal revenue stamps on the deed are sufficient to support the trial court's finding that the transfer of certain parcels of real estate was based upon a valuable consideration and that any presumption that the deeding of the property was merely a gift was overcome.

For the deeds to be effective, delivery was required. The deed of property in Oakland was not recorded until the day after Hobart's death. Whether the grantor intended to transfer the title is a question of fact to be determined by the trial court from a consideration of all the evidence bearing upon the question. (*Hinshaw* v. *Hopkins*, 37 Cal.App. 2d 230, 237 [99 P.2d 283] ; *Moore* v. *Trott*, 162 Cal. 268 [122 P. 462].) There is in the record the testimony of Mrs. Hagist and Edward Hagist that Hobart said "Everything belongs

to [Elsie Hobart].'' The court found that the deed convey-
ing certain property in Alameda County was a grant deed.
There is evidence from which the trial court could infer
that Fred Hobart relinquished control of the property as
his sole property in fee simple. The fact that he intended
to keep a life estate in himself would not prevent the fee
from vesting in Elsie Hobart. (*Bury* v. *Young,* 98 Cal. 446
[33 P. 338, 35 Am.St.Rep. 186]; *Wilkerson* v. *Seib,* 20 Cal.
2d 556 [127 P.2d 904].) It was still the duty of appellant
to prove lack of delivery and that the facts brought the case
within the purview of Probate Code, section 229. In *Vana-
sek* v. *Pokorny,* 73 Cal.App. 312, 318 [238 P. 798], the court
said: ''It may fairly be inferred from the cross-complaint
that the conveyance to appellant was by deed of grant. Such
a deed is supported by a presumption of consideration, the
burden of proving want of consideration is upon the one
seeking to avoid it, and the presumption in its effect applies
to the pleadings as well as to the proof (Civ. Code, §§ 1614,
1615; Code Civ. Proc., § 1963, subd. 39).'' (See, also, *Ban-
ducci* v. *Banducci,* 63 Cal.App.2d 600 [147 P.2d 73].)

During argument before the trial judge the attorney for
appellant stated his position as follows: ''Now, I have in
mind that our having filed the petition that the burden is
on us to show not only the relationship of our client but
also the source from which the property came.'' The inven-
tory and appraisement in the matter of the estate of Elsie
Hobart was admitted in evidence but does not appear in the
record on appeal. Whatever the trial court found therefrom
must be considered accurate and final so far as this appeal
is concerned.

There was some property evidently located in Lake County
which must be assumed to have been deeded by Fred Hobart
to his wife Elsie, as all parties so treated it. The attorney
for the appellant agreed that he would supply that deed for
the record. The trial court found that as to certain real
estate items the claimant ''has failed to prove by a suf-
ficiency of evidence that either or any of said Items came to
Elsie Hobart by any manner or method prescribed by Cali-
fornia Probate Code Section 229.''

The general rule is that matters not contained in the
record will not be considered on appeal. Under such circum-
stances the findings are considered conclusive. Here the trial
court definitely found a lack of proof to sustain the conten-

tion of claimant. (*Sutro Heights Land Co.* v. *Merced Irr. Dist.*, 211 Cal. 670 [296 P. 1088].)

It would be a futile act on this appeal to augment the record relative to the missing deed covering property in Lake County. Augmentation of the record is permitted only when an exhibit has been actually "on file in or lodged with the superior court." (Rules on Appeal, rule 12.) In the present case the deed was not filed or lodged with the superior court.

The order determining heirship is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 20, 1947, and appellant's petition for a hearing by the Supreme Court was denied January 19, 1948. Carter, J., and Schauer, J., voted for a hearing.