*In re* ESTATE OF PETER H. MERTES.—(SONIA MERTES, Adm'r of the Estate of Peter H. Mertes, Deceased, Plaintiff-Appellant, *v.* LINCOLN PARK FEDERAL SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants-Appellees.)

(No. 60988; ▮▮▮▮▮▮▮▮▮▮

First District (3rd Division)—December 4, 1975.

558

Daniel A. Costigan, of Chicago, for appellant.

Thomas J. O'Brien and Robert S. Minetz, both of DiLeonardi & O'Brien, Ltd., of Des Plaines, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is a suit for an accounting of funds deposited by Peter Mertes in a savings account at the Lincoln Park Federal Savings and Loan Association, Chicago. The plaintiff is his widow, and the defendants are the association and the three children of Mertes' first marriage whom he had designated as beneficiaries of the account. The account was in the form of a savings certificate of the type often called a "Totten trust." Under its terms, Mertes, as trustee, could withdraw all or part of the funds at will and the named beneficiaries would receive the remaining balance upon his death.

The original deposit of $20,000 was in the account when Mertes died and the association paid it over to the beneficiaries. The plaintiff—Mertes' second wife and the administrator of his estate—protested the distribution. Her complaint asked that the defendants be compelled to pay her, as Mertes' surviving spouse, her statutory share of the $20,000 and a widow's award of $5,000, plus the expenses of administration and court costs.

■■ The trial court held for the defendants. It found that the trust was neither illusory nor fraudulent and that there was no secretive conduct involved in its establishment or maintenance. We concur in that finding.

At the trial there was an extensive discussion of the case of *Montgomery v. Michaels* (1973), 54 Ill.2d 532, 301 N.E.2d 465. The opinion in *Montgomery* was handed down in September 1973, and Mrs. Mertes filed her complaint soon thereafter. Although *Montgomery* is factually similar to the present case, the trial court held that it was not controlling because the Mertes' account antedated the *Montgomery* decision. In this

court the parties agree that the outcome of the appeal turns on the retroactive or prospective applicability of *Montgomery.*

In *Montgomery,* a wife established savings accounts which named herself as trustee and her children by a prior marriage as beneficiaries. She retained control over the accounts during her lifetime and the balances in them were to be paid to the children at her death. Upon her death, her husband, individually and as administrator of her estate, alleged that the trusts were a fraud upon his marital rights and defeated his statutory right to one-third of her personal estate and his right to a widower's award. The trial court dismissed his citation-petition and his appeal reached the Supreme Court.

The court reaffirmed the validity of savings-account trusts (Totten trusts), but held that such trusts could not defeat the husband's statutory share in his wife's estate or his right to a widower's award. The court also held that such trusts were subject to the costs of administering the decedent's estate.

■■ In attempting to circumvent Montgomery, the defendants argue that it overturned established law—law that was relied upon by Mertes and the savings and loan association in 1970 when his account was opened. One of the criteria in civil cases for determining whether a reviewing court's decision should be applied retroactively is the extent to which parties may have justifiably relied upon prior law. (*Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L.Ed.2d 296, 92 S.Ct. 349. See also *People v. Ellis* (1973), 53 Ill.2d 390, 292 N.E.2d 728; Annot., "Prospective or Retroactive Operation of Overruling Decision," 10 A.L.R.3d 1371 (1966).) The defendants offered no proof of their affirmative ascertainment of the law before opening the account; rather, the reliance they speak about is a general one—a reliance upon what they contend was the prevailing law in 1970. In their attempt to prove what was the contemporary law, they place great emphasis upon the case of *In re Estate of Petralia* (1965), 32 Ill.2d 134, 204 N.E.2d 1. In *Petralia,* a father had set up a Totten trust for his daughter. When he died she sued the administrator of his estate to recover the funds in the account. The court held for the daughter on the ground that her father's execution of the bank's savings-account signature card established an intent on his part to create a trust and that this disposition was operative despite its failure to conform with the Statute of Wills. But the *Petralia* case did not involve a surviving spouse and the court had no need to consider the specific issue raised in *Montgomery.* Similarly, the facts in *In re Estate of Joseph* (1961), 30 Ill.App.2d 492, 175 N.E.2d 265, the other case that the defendants point to as reasonably implying that funds in a Totten trust were immune from the claims of a surviving spouse, are

quite different from those in the present case. There, this court upheld the claims of a son to the funds in a Totten trust established by his father and denied the requests of the widow to turn over these funds to her as administrator. But in *Joseph* the funds remaining in the account represented money belonging to the son that he had asked his father to deposit for him. In short, although both *Petralia* and *Joseph* held that Totten trusts are valid and not subject to laws pertaining to testamentary dispositions, and although the defendants can point to language in both opinions that, broadly construed, might lead to a supposition that such trusts would be enforceable against the claims of a surviving spouse, they have been unable to produce a factually on-point case that *Montgomery* overruled.

■■ *Montgomery* overruled no prior case; a Totten trust involving a spouse versus spouse relationship had never been before the court. *Montgomery* did not upset Totten trusts, it limited them. It merely held that they were subordinate to the expressed statutory policy of protecting a surviving spouse's share in the estate of the deceased spouse.

■■■ A spouse may dispose of his or her property, both personal and real, and thus deprive a husband or wife of a possible inheritance, and the disposition is not vulnerable to attack unless the transaction is a sham, illusory or tantamount to fraud. (*Holmes v. Mims* (1953), 1 Ill.2d 274, 115 N.E.2d 790.) But pre-*Montgomery* law was always to the effect that a spouse had no power to dispose of his or her property by trust and thereby deprive the surviving spouse of a possible inheritance if during their lifetime he or she reserved the right to control the property and was its real owner at the time of death. (*Padfield v. Padfield* (1875), 78 Ill. 16; *Smith v. Northern Trust Co.* (1944), 322 Ill.App. 168, 54 N.E. 2d 75.) The *Smith* case is particularly apt. There a trust was found to be illusory where a husband had amended the trust so that all of his estate, except his pension, would go upon his death to his son and daughter by a previous marriage; and where he had retained the right in the event of changed circumstances to request enough of the principal of the trust estate to maintain himself in his accustomed manner, the right to veto any change in the investment of trust assets, and the right to revoke or amend the trust agreement. While it is true that the incidents of ownership and control exercised by the husband over the trust differ in some ways from the powers exercised by a depositor over his savings-account trust, it would be difficult to maintain with *Smith* as precedent that the trust there was illusory with respect to the surviving spouse's rights but that a Totten trust is not. In summary, the defendants' argument for justifiable reliance on pre-*Montgomery* law is particularly weak in the absence of any decision that *Montgomery* explicitly

reversed, and by the existence of case law which strongly indicated that a surviving spouse would prevail should the issue ever be litigated.

The defendants' case is further weakened by their failure to set forth a convincing argument how the social policy underlying *Montgomery* can be effectuated without giving that decision retroactive effect. In *Montgomery* the court had to balance the general public policy supporting freedom of testamentary disposition with the social concern for the surviving spouse and the State's interest in avoiding the possibility of supporting the spouse with public funds. (See Note, 1973 U.Ill.L.F. 775.) In finding the interest of the surviving spouse paramount the court stressed the almost complete control retained over the savings-account trust by the deceased and concluded: "Under these circumstances, the expressed statutory policy of protecting a surviving spouse's share in the estate should prevail, regardless of the intent of the deceased spouse in creating the savings-account trust." (54 Ill.2d 532, 536.) For all practical purposes the present case is exactly the same as *Montgomery*. It is thus difficult to see how the policy underlying *Montgomery* can be implemented without giving the rule announced there retroactive application to cases, such as the one before us, where the same policy considerations are present.

Finally, this court is obliged to consider the effect on the administration of justice that retroactive application of *Montgomery* might have. The defendants state that the legal and financial communities in Illinois have generally operated under the assumption that Totten trusts were valid and that funds in such accounts would be excluded from the probate estate when computing the amount due the surviving spouse. But the Supreme Court was well aware of the general popularity and acceptance of Totten trusts in Illinois when it handed down *Montgomery* (see Note, 1973 U.Ill.L.F. 775, 779 n. 21) and obviously found this general reliance to provide no bar to reaching the decision that it did. Similarly, this court concludes that no undue burden on the administration of justice would result were the principles announced in *Montgomery* to be held applicable here. Admittedly, a decision favoring retroactivity casts doubt upon the validity of previously completed transfers to beneficiaries under savings-account trusts; yet it should be apparent that when any decision is given retroactive operation some previously settled matter may possibly be reopened. Proof of a burden on the administration of justice is insufficient in itself for denying retroactive effect to a decision; a potential burden on our courts must be weighed against the extent to which parties justifiably relied upon prior case law and the degree to which the policy underlying the decision necessitates its retroactive operation. It is our conclusion that the adverse effect on

562

the administration of justice that the defendants fear is outweighed by their unreasonable reliance on their surmise of what the law would be if a surviving spouse challenged the Totten trust of a deceased spouse, and by our belief that the social policy underlying *Montgomery* can only be effectuated if the rule announced in that decision is given effect in the present case.

The judgment is therefore reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McGLOON, P. J., and McNAMARA, J., concur.