[No. A030471. First Dist., Div. Five. July 2, 1986.]

Estate of MILBURN WARREN WILSON, Deceased.
RUTH WILSON, Petitioner and Respondent, v.
BILLY W. BOWENS et al., Objectors and Appellants.

**COUNSEL**

Gregory Wilcox, Deborah Lynn Holmes and Roberts & Stokes for Objectors and Appellants.

Suzanne E. Good and Galinsky & Good for Petitioner and Respondent.

**OPINION**

**KING, J.**—In this case we hold that when a spouse deposits community property funds in a bank account in his name as trustee for a third person, upon that spouse's death only one-half of the community property in the

account is transmitted to the third person. The other one-half, being the surviving spouse's share of community property, goes to the survivor even though he or she is already receiving more than one-half of the total community property of the parties.

Billy W. Bowens, a son of the decedent, and Mildred Tolliver, mother of two minor children of decedent, appeal from an order which awarded Ruth Wilson (Wilson) half the funds in three separate "Totten trusts"[1] created by Milburn Warren Wilson (decedent) in favor of three of his children. Bowens and Tolliver contend Wilson is not entitled to any part of the disputed trust accounts because decedent had the right to make a testamentary disposition of one-half of the entire community property taken as a whole, rather than merely one-half of each community property asset.[2] We affirm the judgment.

Decedent died intestate on June 12, 1983, leaving a surviving spouse, Wilson, and nine children. Decedent opened ten Totten trust bank accounts for his children and four bank trust accounts for his wife prior to his death. At his death the children's accounts totalled approximately $131,500 and Wilson's accounts totalled approximately $38,500. Wilson claims she had no knowledge of these accounts prior to decedent's death. She first discovered the trust accounts when she opened his safety deposit box and found the bank books.

Wilson filed a community property petition under Probate Code section 650[3] claiming all of decedent's community property as her own, including

---

[1]The Totten trust basically allows a decedent to make a testamentary disposition of cash assets without going through the formalities of drawing up a will. "Under a rule established in the New York case of *Matter of Totten,* if a depositor merely opens a bank account *in his own name as trustee* for another person, intending to reserve the power to withdraw funds during his lifetime, a *tentative trust* is created, *revocable* during the trustor's lifetime or by his will, and at his death presumptively an absolute trust. *Partial revocation* takes place whenever the depositor withdraws money from the account, and the beneficiary is entitled only to the balance on deposit at death. But if the *beneficiary dies first,* the tentative trust is terminated." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 17, p. 5379, italics in original.) California has recognized the legitimacy of Totten trusts for a long time (*Kosloskye* v. *Cis* (1945) 70 Cal.App.2d 174 [160 P.2d 565]; *Estate of Collins* (1978) 84 Cal.App.3d 928, 932 [149 Cal.Rptr. 65], stating the Totten trust doctrine "is accepted law in this state"), and recently the Legislature authorized this form of testamentary disposition by enacting the California Multiple-Party Accounts Law. (Prob. Code, § 5100 et seq.)

[2]Bowens and Tolliver do not dispute on appeal the court's implicit finding that the funds for these accounts came from community property nor that the accounts themselves were community property during decedent's lifetime.

[3]Probate Code section 650, subdivision (a), provides in pertinent part: "A surviving spouse . . . may file a petition in the superior court in the county in which the estate of the deceased spouse may be administered alleging that administration of all or a part of the estate is not necessary for the reason that all or a part of the estate is property passing or belonging to the surviving spouse."

Unless otherwise indicated, all further statutory references are to the Probate Code.

the children's trust accounts. Bowens and Tolliver objected to the requested distribution of any of the money in the children's accounts because it constituted less than half of the total value of the Wilsons' community property.

The trial court awarded Wilson all community property land, vehicles and household furnishings. In addition, the court awarded her 100 percent of all the trust accounts not subject to dispute and 50 percent of the three accounts held by decedent as trustee for the children.

Bowens and Tolliver argue former section 201[4] required the court to deny Wilson's request for one-half of each of the trust accounts because the statute specifically allowed decedent to dispose of his one-half of the community property at his death. Section 201 stated prior to its repeal: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

Contrary to the assertion of Bowens and Tolliver, the statutory language of section 201 does not clearly indicate the meaning of "community property" in this context. The phrase "one-half of the community property" is, on its face, capable of meaning either one-half of the "total value" of all community property or one-half of "each item" of community property.

All cases cited by the parties as well as those found by our independent research treat the testamentary right articulated in section 201 as meaning the decedent has a right to dispose of only one-half of *each community property asset* to someone other than a spouse, although none of the cases directly hold the decedent's right of disposition is so limited.

Bowens and Tolliver rely on *Odone* v. *Marzocchi* (1949) 34 Cal.2d 431 [211 P.2d 297, 17 A.L.R.2d 1109], to support their argument that the term "community property" as used in section 201 means the "total value of the community property." In *Odone*, a wife gave $5,400 to a friend just before the wife went into the hospital. She asked him to pay her bills with the money, and to return the balance to her if she lived, but to keep the balance if she died. She died eight days after making this request. Decedent's husband brought suit to recover this personal property from his wife's friend.

---

[4]Decedent opened all the trust accounts at issue and died before 1985, therefore section 201 governs his testamentary disposition of assets despite its repeal as of January 1, 1985. (See Stats. 1983, ch. 842, § 19, p. 3024.) The relevant language of section 201, however, continues in substance in the new sections 100, 6101 and 6401. (See Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (1986 Supp.) § 100, pp. 28-29.)

The court held this gift *causa mortis* "upon [the wife's] death may be avoided by [the husband] as to one-half only." (*Odone* v. *Marzocchi, supra,* 34 Cal.2d at p. 439.)

Bowens and Tolliver argue this holding is consistent with their view of section 201 because the $5,400 constituted *all* of the community property of both spouses. However, they are unable to point out where such a finding appears in the opinion. An independent review of *Odone* reveals the court made no such finding. In fact, the court held the husband could avoid his wife's gift only as to "one-half thereof," without any consideration whatsoever of the total amount of the parties' community property or the percentage of the community which the $5,400 gift constituted. In reaching its conclusion, the court relied on the rule that "a gift made *inter vivos* by the husband to a third person of community property without the wife's consent is valid as to *one-half thereof* at his death, although the wife, during her husband's lifetime may set it aside *in toto*." (*Id.,* at p. 438, italics added.)

In *Trimble* v. *Trimble* (1933) 219 Cal. 340 [26 P.2d 477], the court allowed the wife to set aside a one-half interest in each of two parcels of property that her husband had given to their children, without her consent, shortly before he died. The court gave the wife a one-half interest in each parcel of land without any consideration of the total value of community property left to her or of the total value of each piece of property. The *Trimble* court unequivocally held "the deeds executed by the deceased without consideration and without the consent of his wife are valid conveyances as to *one-half of the property sought to be conveyed,* but may be avoided by his wife as to her half of said community property." (*Id.,* at p. 347, italics added.)

The California Supreme Court examined a closely related issue when, under the then existing law of intestacy, a decedent's spouse was entitled to one-half of the community property and surviving children were entitled to the other half. The court held that at the time of decedent's death the children acquired a present vested interest in an undivided one-half of the community property and the surviving spouse acquired an identical interest in the other one-half of the community property. (*Estate of Sweitzer* (1932) 215 Cal. 489 [11 P.2d 633].)

In *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 403 [6 Cal.Rptr. 13, 353 P.2d 725], the California Supreme Court implied that a surviving spouse "became entitled, immediately upon her husband's death, to one-half of each part of the community property." The *Tyre* court held a "husband cannot deprive his wife of her community interest by exceeding his testa-

mentary powers to make gifts of more than half the community property to third persons . . . ." (*Id.*, at p. 405.)

While these cases did not involve Totten trusts, they dealt with analogous situations. Each concerned an inter vivos gift to someone other than the surviving spouse of community property which became a testamentary disposition upon the donor's death. ■ Similarly, a Totten trust is created during the decedent's life and is a gift to the same extent that any revocable trust is a gift.[5] At the donor's death the Totten trust becomes a testamentary disposition of the assets contained within it. ■ Because a Totten trust is indistinguishable from the cases examined above, the same treatment should apply.

A general rule emerges from these cases. If a spouse, after the death of the decedent, proves a lack of consent to a gift, it will be avoided to the extent of the nonconsenting spouse's one-half interest in community property transferred. (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1070-1071 [209 Cal.Rptr. 383]; see also *Trimble* v. *Trimble, supra,* 219 Cal. at p. 347.)

■ The rationale of this rule is founded in the nature of community property. "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests." (Civ. Code, § 5105.) In other words, each spouse has a vested undivided one-half interest in the community property.[6] Death of a spouse only dissolves the community; it does not affect the character of the property acquired or rights vested before the spouse's death. (*Solko* v. *Jones* (1931) 117 Cal.App. 372, 376 [3 P.2d 1028], disapproved on other grounds in *Flores* v. *Brown* (1952) 39 Cal.2d 622, 632 [248 P.2d 922].)

■ Because each asset is only half his or hers to give, a spouse cannot make a testamentary disposition to a third party of any specific item of community property except by a "forced election" requiring the surviving spouse to elect either to take under the testamentary scheme or to take his

---

[5]In both *Odone* and *Tyre* the gifts were revocable. In *Odone,* the gift of $5,400 was conditional on the wife's death and also on the amount of money she would need during her illness. In *Tyre,* the insured husband could have changed the named insurance beneficiary from his wife to a third party at any time before he died.

[6]The vested nature of the surviving spouse's claim to one-half of the community property upon the death of the other spouse is consistent with, but not dependent on, the vested nature of the surviving spouse's community property rights during marriage. (*Estate of Murphy* (1976) 15 Cal.3d 907, 916 [126 Cal.Rptr. 820, 544 P.2d 956].) "[T]he surviving spouse's rightful claim to half of the community property on the other spouse's death stems not from the rights held during the marriage but from the survivor's vested interest existent immediately upon death unless and until voluntarily relinquished." (*Ibid.*)

or her community property share.[7] To give an example, one spouse cannot devise the family residence to a third party even if there are sufficient other community assets to counterbalance the gift's value, because each spouse only owns an undivided one-half interest in the residence. Obviously, the decedent cannot give away more than he or she owns. Indeed, it would be quite unfair to allow either spouse to give away an asset that both spouses treasure based merely on the contingency of who dies first. The mere existence of a Totten trust at the time of the death of one spouse does not put the surviving spouse to a forced election.

Although this rule makes less practical sense in the context of fungible assets like money, as we have here, the same rule applies. (See *Odone* v. *Marzocchi, supra,* 34 Cal.2d 431.) Thus while the decedent cannot leave a third party the entire balance of an account which has $10,000 of community property in it and is held as trustee for the third party, the decedent can, by will, leave a legacy of $10,000 to the third party from his one-half share of the community property.

In sum, since each Totten trust is an individual community property asset in which the decedent had only a one-half undivided interest at the time he died, he could pass on to third parties only his one-half that asset—in this case one-half of the funds in each account. Although the practical effect of this rule limits the ability to make testamentary dispositions of community property through Totten trusts, individuals possess virtually unlimited ability to dispose of their share of the community assets at death by will.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

---

[7]The doctrine of election provides that when a testator spouse disposes of property, by will, which belongs in part or in whole to the surviving spouse, and in the same will devises other property to the surviving spouse, an election is forced. (*Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 685 [325 P.2d 872].) The surviving spouse cannot at the same time take the benefits offered by the will and repudiate the losses, but must either accept the terms of the will completely or reject them completely. (*Ibid.*) Although the doctrine of election has been most frequently applied to wills, it has also been held to apply to any instrument creating property rights. (*Estate of Waters* (1972) 24 Cal.App.3d 81, 85 [100 Cal.Rptr. 775]; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 21, p. 5542.)