[No. D015303. Fourth Dist., Div. One. Feb. 3, 1993.]

Estate of HAZEL L. ALLEN, Deceased.
ERNEST J. ALLEN, Objector and Appellant, v.
FIRST PRESBYTERIAN CHURCH OF IRONWOOD, Claimant and
Respondent.

**COUNSEL**

John M. Wenzel and Suuzen Ty Anderson for Objector and Appellant.

F. Morton Cameron for Claimant and Respondent.

**OPINION**

**KREMER, P. J.**—The issue in this case is whether a spouse unintentionally omitted from a will is entitled to a share of several Totten trust accounts which the decedent created before her marriage. We conclude the beneficiary of the Totten trusts is entitled to the proceeds of the Totten trusts. We therefore affirm the judgment.

FACTS

The facts of this case are undisputed. In 1987, Hazel Morris, a single woman without children, executed a will leaving her property to the First

Presbyterian Church of Ironwood, Michigan (hereafter Church) and her executor, and opened three Totten trust accounts naming the Church as beneficiary. In March 1990, Hazel married Ernest Allen.[1] She died later that year without amending her will or otherwise providing for Ernest. At the time of her death, her property consisted entirely of her separate personal property.

Ernest filed a petition seeking one-half of Hazel's property as a surviving spouse who had been unintentionally omitted from the will pursuant to Probate Code[2] section 6560. The Church filed a petition seeking a determination the Totten trusts belonged to it. Ernest responded to the Church's petition, contending he was entitled to one-half of the Totten trust accounts or to have their value included in Hazel's estate for the purpose of computing his one-half share of her separate property. The probate court determined Ernest was an omitted spouse under section 6560 but he was not entitled to any share of the Totten trust accounts or to have their value included in the estate.

## DISCUSSION

The Legislature has provided in section 6560 for surviving spouses who have been unintentionally omitted in a will.  ██  The statute "reflects a strong public policy disfavoring disinheritance of a surviving spouse under the terms of a premarital will in which the testator has otherwise failed to provide. [Citations.]" (*Estate of Green* (1981) 120 Cal.App.3d 589, 592 [174 Cal.Rptr. 654]; *Estate of Shannon* (1990) 224 Cal.App.3d 1148, 1152 [227 Cal.Rptr. 794].)

Section 6560 provides:

"Except as provided in Section 6561 [where spouse is provided for outside the will or waived the right to share in the testator's estate], if a testator fails to provide by will for the testator's surviving spouse who married the testator after the execution of the will, *the omitted spouse shall receive a share in the estate* consisting of the following property in the estate:

"(a) The one-half of the community property that belongs to the testator under Section 100.

"(b) The one-half of the quasi-community property that belongs to the testator under Section 101.

---

[1] For the purposes of clarity we refer to Hazel Morris Allen and Ernest Allen by their first names.

[2] All statutory references are to the Probate Code unless otherwise specified.

"(c) *A share* of the separate property of the testator *equal in value to that which the spouse would have received if the testator had died intestate,* but in no event is the share to be more than one-half the value of the *separate property in the estate.*" (Italics added.)

█ Ernest contends the court erred in failing to find he was entitled either to a share of the Totten trust accounts or to include their value in the estate for purposes of computing his share of the estate. We disagree. Under section 6560, the omitted spouse is entitled to what he or she would have received if the testator had died *intestate* up to "one-half the value of the *separate property in the estate.*" Our review of the law convinces us an omitted spouse is not entitled to include Totten trust accounts in computing the statutory share because a Totten trust account is not part of the testator's estate at the time of his death; at the time of the testator's death, a Totten trust account transfers to the beneficiary of the account, not the testator's estate.

█ A Totten trust account "basically allows a decedent to make a testamentary disposition of cash assets without going through the formalities of drawing up a will." (*Estate of Wilson* (1986) 183 Cal.App.3d 67, 69, fn. 1 [227 Cal.Rptr. 794].) California has long recognized the legitimacy of Totten trusts. (See *Estate of Collins* (1978) 84 Cal.App.3d 928, 932 [149 Cal.Rptr. 65].)

"Under a rule established in the New York case of *Matter of Totten,* if a depositor merely opens a bank account in his own name as trustee for another person, intending to reserve the power to withdraw funds during his lifetime, a tentative trust is created, revocable during the trustor's lifetime or by his will, and at his death presumptively an absolute trust. Partial revocation takes place whenever the depositor withdraws money from the account, and the beneficiary is entitled only to the balance on deposit at death. But if the beneficiary dies first, the tentative trust is terminated." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 7, pp. 888-889, italics deleted.)

In California, the Legislature has enacted statutes addressing Totten trust accounts. These statutes are contained in the Probate Code section covering nonprobate transfers. (See § 5100 et seq.)[3] █ The Legislature has stated a Totten trust "[is] not to be considered as testamentary" and therefore

---

[3]Section 80 defines a Totten trust account as "an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sums on deposit in the account. In a Totten trust account, it is not

need not comply with statutory formalities for testamentary dispositions of property. (§§ 5302, subd. (e), 5304; see also *Estate of Collins, supra,* 84 Cal.App.3d 928, 932-933.)[4] The Legislature has also provided that a beneficiary designated in a Totten trust account cannot be changed by will. (§ 5302, subd. (e).)

The Legislature has also made it clear the funds in a Totten trust account belong to the named beneficiary on the account upon the decedent's death. Thus, in section 5302, subdivision (c) the Legislature has provided: "If the account is a Totten trust account: [¶] . . . [¶] (2) On death of the sole trustee . . . (A) any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving . . . unless there is clear and convincing evidence of a different intent . . . ." (See also *Estate of Fisher* (1988) 198 Cal.App.3d 418, 425 [244 Cal.Rptr. 5].)

Under the statutory scheme, since the beneficiary of a Totten trust account may not be changed by a will and since the Legislature has provided that funds remaining in a Totten trust account belong to the named beneficiary of the account when the trustee dies, it is clear the Legislature did not intend a Totten trust account was to be included in a decedent's estate for either the purposes of intestate succession or distribution by will. Thus, since the Legislature has stated in section 6560 that an omitted spouse is entitled to a share of the testator's separate property "equal in value to that which the spouse *would have received if the testator had died intestate*" up to "one-half the value of the separate property *in the estate*" (italics added), an omitted spouse is not entitled to a share of any Totten trust accounts (or their equivalent value) because the spouse would not have received any portion of the accounts had the testator died intestate; the funds in the accounts, upon the testator's death, belong to the beneficiary, not to the estate.

This construction—that a Totten trust fund account is not part of the trustee's estate upon his or her death—is consistent with general case law holding a decedent's estate does not include interests which terminate upon his or her death, e.g., due to a survivorship right in a third party or due to the

---

essential that payment to the beneficiary be mentioned in the deposit agreement. A Totten trust account does not include (1) a regular trust account under a testamentary trust or a trust agreement which has significance apart from the account or (2) a fiduciary account arising from a fiduciary relation such as attorney-client."

[4] In *Estate of Collins, supra,* 84 Cal.App.3d 928, 932-933, the court explained: "In a real sense a tentative or Totten trust is not a trust at all but is a recognized exception to the law of testamentary disposition and as such obviates the necessity for compliance with the requisite statutory elements of executing a will. 'The doctrine is an anomalous fiction evolved by the courts to enable persons to dispose of small sums of money without testamentary formalities and expense.' [Citations.]"

right of a named beneficiary to funds upon death of the trustor. (See, e.g., *Estate of Pezzola* (1980) 112 Cal.App.3d 752, 756-757 [169 Cal.Rptr. 464] and cases cited therein [noting in small estate set asides referring to the "whole estate," "the Legislature—consistent with the generally accepted definition of the comprehensive term—limited exclusion to decedent's interests as 'joint tenant, or in which he had a life or other estate terminable upon his death, . . .' "]; *Estate of Welfer* (1952) 110 Cal.App.2d 262, 265 [242 P.2d 655] [holding a beneficiary of a life insurance policy "takes by virtue of the contract of insurance rather than by the law of succession; that the proceeds do not become a part of the estate of the insured; and the law of descent and distribution has no applicability to such cases."]; *Estate of Hobart* (1947) 82 Cal.App.2d 502, 507 [187 P.2d 105] [holding surviving spouse "did not become the sole owner of the joint tenancy interest in the securities by descent but by survivorship in the original grant creating the tenancy."]; *Estate of Ettlinger* (1946) 73 Cal.App.2d 967, 969 [167 P.2d 738] [holding since life insurance proceeds passed to beneficiary upon testator's death, they were not included in testator's separate property " 'existing at [his] death.' "]; *Bank of America etc. Assn.* v. *Hazelbud* (1937) 21 Cal.App.2d 109, 115 [68 P.2d 385] [holding beneficiary, not omitted surviving spouse, was entitled to funds in trust account].)

■ Ernest argues we should construe the term "estate" more broadly in the situation of the omitted spouse. He argues that despite the language in section 5302 stating funds belonging in Totten trust accounts belong to the beneficiary upon the death of a sole trustee absent "clear and convincing evidence of a different intent," there are exceptions to this rule. For example, he points to the fact a surviving spouse may recover his or her half interest in the community funds in preference to the beneficiary. (§§ 5305, subd. (d), 5307; *Estate of Wilson, supra,* 183 Cal.App.3d 67, 73.) Ernest also points to section 5000, subdivision (c), which provides: "Nothing in this section limits the rights of creditors under any other law."[5] Based on these two "exceptions," Ernest argues:

"Since Probate Code section 5302 is subject to policies embodied in other statutes favoring the protection of a spouse's rights to community property and a creditor's right to recover amounts owed at the time of death, it seems logical that the enactment of section 5302 was not intended to thwart an equally strong public policy in favor of protecting a surviving spouse from inadvertent disinheritance. Thus, reason would suggest that section 5302 is also subject to the provisions of Probate Code section 6560, protecting the rights of an omitted spouse."

---

[5]Section 5000 addresses nonprobate transfers on death in various listed written agreements and provides such instruments are not invalid because the instrument does not comply with the requirements for executing a will.

We find this argument unpersuasive. First, the so-called "exception" to section 5302 "favoring the protection of a spouse's rights to community property" is not an exception to the general rule a beneficiary receives the funds in a Totten trust account upon the death of the testator; it merely reflects the rule that one can give away only that which one owns, i.e., a trustee can only give to the beneficiary his or her share of community property. Second, as to Ernest's so-called policy "exception" for creditors, this similarly reflects the rule that the decedent can give away only what he or she owns, i.e., that his or her assets may be subject to debts.[6] Third, both these "exceptions" are statutorily based; the Legislature has provided no such "exception" for the omitted spouse. Fourth, Ernest's interpretation of section 6560 would render certain language in section 6560 to be mere surplusage.

The Legislature, in section 6560, specifically provided the omitted spouse's share of the testator's separate property was "equal in value to that which the spouse would have received *if the testator had died intestate*" up to "one-half the value of the separate property *in the estate*." (Italics added.) Under Ernest's interpretation, the emphasized phrases would be rendered mere surplusage. An interpretation of a statute which renders language to be mere surplusage is to be avoided. (See *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 219 [246 Cal.Rptr. 733, 753 P.2d 689].) Ernest would grant the omitted spouse a share in all testator's separate property, regardless of whether it would have passed by intestacy or was "in the estate." Had the Legislature intended such a result, they easily could have so provided. They did not.

Ernest argues various authorities support his proposition that separate property held in Totten trust accounts should be subject to the statutory share of an omitted spouse. He quotes Witkin, who in generally discussing Totten trusts, states:

"The trust may be challenged or attacked in several ways:

"(a) *Creditors* of the depositor can reach the fund. (See Rest.2d, Trusts § 58, Comment d.)

"(b) Under the Restatement rule, a *surviving widow* may attack the trust to the extent necessary to protect her statutory intestate share in the depositor's

---

[6] We also note section 5000 does not specifically address Totten trust accounts. Section 5000 addresses nonprobate transfers in written instruments generally and their validity despite noncompliance with the formalities for wills. The equivalent provision addressing Totten trust accounts is contained in section 5304. This section does not contain a provision addressing the rights of creditors.

estate. (See Rest.2d, Trusts § 58, Comment e; 64 Harv. L.Rev. 1367; 65 Harv. L. Rev. 512; 1950 A.S. 654.)[7]

"(c) The guardian or conservator of an *insane depositor* may apply to the court for permission to revoke the trust where the fund is necessary for the ward's or conservatee's welfare. (See Rest.2d, Trusts § 58, Comment c.) But he cannot act on his own authority; he must petition the Probate Court for authority. [Citations.]" (11 Summary of Cal. Law (9th ed. 1990) Trusts, § 7, p. 889, italics in original.)

Ernest also cites as authorities several cases from Illinois and New York which hold a surviving spouse is entitled to include funds in a Totten trust account in computing a statutory share of the decedent's estate. (*Montgomery* v. *Michaels* (1973) 54 Ill.2d 532 [301 N.E.2d 465, 467, 64 A.L.R.3d 181] ["the expressed statutory policy of protecting a surviving spouse's statutory share in the estate should prevail, regardless of the intent of the deceased spouse in creating the savings-account trust"]; *Mertes* v. *Lincoln Park Fed. Sav. & L. Ass'n of Chicago* (1975) 34 Ill.App.3d 557 [340 N.E.2d 25, 28] [following the Illinois Supreme Court's decision in *Montgomery* v. *Michaels, supra,* 54 Ill.2d 532 (301 N.E.2d 465)]; *Matter of Estate of Agioritis* (1976) 40 N.Y.2d 646 [389 N.Y.S.2d, 357 N.E.2d 979, 981-982] [construing newly enacted law as permitting a surviving widow electing to take statutory share rather than under will to include certain "testamentary provisions" including a Totten trust account in computing the statutory share.].)

We find these authorities to be of little persuasive value because these authorities—i.e., the Restatement Second of Trusts and the out-of-state cases—do not address the circumstances existing in community property jurisdictions such as California. The Restatement's provision addresses the rights of omitted spouses generally and is clearly meant to apply to the majority of jurisdictions which, unlike California do not have a community property system. The out-of-state cases both involve noncommunity property jurisdictions and therefore are not persuasive on what should be done in a community property state.[8] The probate court judge here recognized the critical importance of California's community property system in rejecting

---

[7]The Restatement Second of Trusts section 58, comment e, addressing Totten trust accounts, provides: "Although the surviving spouse in claiming his or her statutory distributive share of the estate of the decedent is not entitled to include in the estate property transferred during his lifetime by the decedent in trust for himself for life with remainder to others, even though the decedent reserves a power of revocation . . . the surviving spouse of a person who makes a savings deposit upon a tentative trust [such as a Totten trust] can include the deposit in computing the share to which such surviving spouse is entitled."

[8]We also find the reasoning of these out-of-state cases to be unpersuasive because they are premised on the idea Totten trust accounts are testamentary. (*Montgomery* v. *Michaels, supra,*

Ernest's claim to a share of the Totten trust accounts. The court noted "the community property law is protection for the surviving spouse."

In California, the community property system protects an omitted spouse's "statutory share" by ensuring the surviving spouse retains at least one-half[9] of the marital property (i.e., community property) when his or her spouse dies regardless of whether the property is included within the "estate" of the decedent or is in a form, such as a Totten trust account, which otherwise is payable to a named beneficiary upon death.

Because the California community property system already provides protection for a surviving spouse, the policy arguments made in noncommunity property states for allowing spouses to reach Totten trust account funds are of little value.[10] Finally, as we pointed out above, permitting the omitted spouse to a share of separate property which is not part of the decedent's estate, such as a Totten trust, would conflict with California's statutory and case law. Ernest's arguments are ones that should be addressed to the Legislature, not to the courts.

We conclude the probate court correctly determined Ernest was not entitled to a share of the Totten trust accounts or to include their value for the purpose of calculating his share as an omitted spouse.

---

54 Ill.2d 532 [301 N.E.2d at pp. 467-468]; *Matter of Estate of Agioritis, supra,* 40 N.Y.2d 646 [357 N.E.2d at pp. 979, 981].) Our Legislature has provided Totten trust accounts are not to be considered testamentary. (§ 5304.)

Further, the Illinois cases have been overruled by subsequent legislation (see *In re Estate of Grigg* (1989) 189 Ill.App.3d 5 [545 N.E.2d 160, 162]; *Clay* v. *Woods* (1985) 139 Ill.App.3d 711 [487 N.E.2d 1106, 1108]) and the New York case was not based on a judicially created public policy exception for an omitted spouse but on a statute providing a Totten trust account was a testamentary substitute subject to a surviving spouse's right of election. (*Matter of Estate of Agioritis, supra,* 40 N.Y.2d 646 [357 N.E.2d 979, 980].)

[9]If a married decedent dies intestate, the surviving spouse is entitled to one-half the decedent's community property in addition to the one-half of the community property that belongs to the surviving spouse by virtue of the community property laws. (§§ 6401, 100.)

[10]The Illinois Supreme Court in *Johnson* v. *La Grange State Bank* (1978) 73 Ill.2d 342 [22 Ill. Dec. 709, 383 N.E.2d 185] characterized the issue in *Montgomery* v. *Michaels, supra,* 54 Ill.2d 532 [301 N.E.2d 465] as "whether certain savings account trusts ('Totten trusts') created by the decedent for the benefit of her children by a former marriage defrauded the surviving spouse of his *marital rights.*" (*Johnson* v. *La Grange State Bank, supra,* 73 Ill.2d 342 [383 N.E.2d at p. 190], italics added.) The court, addressing inter vivos transfers other than Totten trusts, stated "an *inter vivos* transfer of property is valid as against the *marital rights* of the surviving spouse unless the transaction is tantamount to a fraud as manifested by the absence of donative intent to make a conveyance of a present interest in the property conveyed." (*Id.* at p. 194, italics added.) In California "marital rights" are provided for by the community property system.

## Disposition

The judgment is affirmed.

Work, J., and Nares, J., concurred.