Filed 10/24/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| PAMELA K. REICH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JUDITH REICH et al., as Trustees, etc.,<br><br>    Defendants and Respondents. | B332714, consolidated with B332980<br><br>(Los Angeles County Super. Ct. Nos. 22STPB10378, 22STPB10376) |

        APPEAL from orders of the Superior Court of Los Angeles County, Jonathan L. Rosenbloom, Judge.  Affirmed.

        Jeffer, Mangels, Butler & Mitchell and Vatche J. Zetjian for Plaintiff and Appellant.

        Weinstock Manion, Jessica G. Babrick and Andrew G. Smith for Defendants and Respondents.

\* \* \* \* \* \*

Under California law, a person whose spouse dies without providing for them in "testamentary instruments" pre-dating their marriage is, as a general matter, statutorily entitled to a share of the decedent's "estate" as an "omitted spouse." (Prob. Code, § 21600 et seq.)[1] This appeal presents the following question: Does a decedent's "estate," for the purpose of calculating the "omitted spouse's share," encompass the proceeds of an individual retirement account (IRA)[2] when the IRA's beneficiaries are two "separate trusts" that were created by the decedent's testamentary trust? We conclude that the answer is "no" because an IRA is a nonprobate asset (§§ 5000, 5011) and because the IRA proceeds never pass *through* the decedent's testamentary trust to the beneficiaries' separate trusts. (Cf. *Estate of Davis* (1985) 171 Cal.App.3d 854, 857-858). We accordingly affirm the probate court's orders denying the surviving spouse's petitions to include the IRA proceeds in calculating her omitted spouse's share.

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

[2] An IRA is an account created by statute under the Internal Revenue Code that "offer[s] tax advantages to encourage individuals to save for retirement." (*Clark v. Rameker* (2014) 573 U.S. 122, 124.)

# FACTS AND PROCEDURAL BACKGROUND

## I.   Facts

### A.   *The Trust*

In September 2003, Thomas Reich[3] created a revocable trust to provide for the distribution of some of his assets upon his death.  The operative trust document is the Third Amendment and Restatement of the Thomas M. Reich Revocable Trust (the Trust), dated May 19, 2016.  The Trust specifies that (1) Thomas's ex-wife, his brother, and his nephew are to receive a total of $1.5 million in specific, cash gifts; and (2) Thomas's daughter Shannon Reich—or, if Shannon dies before Thomas, Thomas's granddaughter Leah Tesi—is to receive any residue of the Trust's assets in "separate trusts" created by the Trust for the recipients' benefit.[4]

### B.   *The IRA*

Thomas maintained an IRA at PNC Bank.  On November 4, 2016, Thomas completed a form designating Shannon's and Leah's separate trusts as each receiving one-half of the IRA's proceeds upon his death.

### C.   *Marriage*

Thomas thereafter married his "longtime close acquaintance[]," Pamela Reich.  They married on November 20, 2020, and Thomas died on July 2, 2021.  At no point during their

---

[3]   Because many of the parties involved in this case share the same last name, we use first names to avoid confusion.  We mean no disrespect.

[4]   Thomas also had a son, but expressly disinherited him in the Trust.

3

seven-and-one-half-month marriage did Thomas update the Trust to provide for Pamela.

### D. *Death*

At the time of Thomas's death, the IRA's balance was around $1.5 million. The IRA is Thomas's separate property.

## II. Procedural Background

### A. *Initial petition for an omitted spouse's share, and initial litigation*

On November 16, 2021, Pamela filed a petition that sought, among other things, an omitted spouse's share of Thomas's estate. As pertinent here, she argued that the proceeds of Thomas's IRA were part of the estate from which she receives a share because those proceeds had to be "marshal[led]" through the Trust before they could pass to Shannon's and Leah's separate trusts.

Shannon demurred to the petition, partly on the ground that the IRA proceeds would pass *directly* to the separate trusts and hence *not* through the Trust, such that they fell outside of Thomas's estate for purposes of calculating the omitted spouse's share. In a May 2022 order, the trial court overruled the demurrer, ruling that an IRA's proceeds can sometimes be included in a decedent's estate and that the IRA proceeds in this case would pass to "sub-Trust[s]" of the Trust and thus "essentially . . . be paid" "into the actual Trust."

### B. *Partial settlement of initial petition*

In August 2022, Pamela and the Trust's beneficiaries reached a partial settlement. Because there were "insufficient assets . . . to fully satisfy the specific gifts" delineated in the Trust, the settling parties each agreed to take proportionally reduced amounts to accommodate Pamela's omitted spouse's

4

share.  Under the settlement, Pamela received $188,483.57 in cash as well as stock and half of the proceeds of Thomas's life insurance policy.  The IRA proceeds were explicitly "excluded" "from [the] settlement," leaving the dispute over Pamela's share of those proceeds to be resolved in future litigation.

### C.    *Further petitions for omitted spouse's share*

Pamela subsequently filed two identical petitions—one as to Shannon's separate trust and another as to Leah's separate trust—regarding her entitlement to a share of the IRA proceeds as part of her "omitted spouse's share."  This new proceeding was assigned to a different bench officer than Pamela's original petition.[5]

After briefing by Pamela and the trustees of the Trust, and a hearing, the probate court issued orders on August 31, 2023 dismissing Pamela's petitions with prejudice.  The court reasoned that the IRA proceeds were not part of Thomas's "estate"—and hence were not an asset subject to the "omitted spouse's share"— because the proceeds constitute a "nonprobate" asset and because the IRA beneficiary designation form specifies that the proceeds would "flow directly" to Shannon's and Leah's separate trusts (rather than through Thomas's Trust).  The court also ruled the prior demurrer ruling in Pamela's favor on this issue was "not controlling."

### D.    *Appeal*

Pamela timely appealed the orders, and we consolidated the two appeals.

---

[5]    Although neither the settlement nor the docket reflect a dismissal of Pamela's initial probate petition, the parties have proceeded as if the only live petitions are the two new petitions filed after the settlement.  We will do the same.

5

**DISCUSSION**

Pamela asserts that the probate court erred in dismissing her petitions for an omitted spouse's share of the IRA proceeds. Because our evaluation of this assertion turns on questions of statutory and contractual interpretation as well as the application of the law to undisputed facts, our review is de novo. (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1124 [construction of Probate Code; de novo review]; *Burch v. George* (1994) 7 Cal.4th 246, 254 [interpretation of trust instrument with no conflicting extrinsic evidence; question of law]; *Estate of Dito* (2011) 198 Cal.App.4th 791, 804 [omitted spouse's share focuses on "the intent of the decedent"].)

**I.    Governing Law**

Because "[i]t is the policy of [California] that [spouses are to] provide[] for [one another]," a person's failure to "provide for [their] surviving spouse" in their testamentary instruments is "'strong[ly]'" "'disfavor[ed]'" and thus generally presumed to be the product of "oversight, accident, mistake or unexpected change of condition" rather than intent. (*Estate of Torregano* (1960) 54 Cal.2d 234, 248-249; *Estate of Allen* (1993) 12 Cal.App.4th 1762, 1765; *Estate of Duke* (1953) 41 Cal.2d 509, 512; *Estate of Will* (2009) 170 Cal.App.4th 902, 907; *Estate of Katleman* (1993) 13 Cal.App.4th 51, 60, 65.)  One "unexpected change of condition" that triggers this presumption is a marriage occurring *after* the execution of a person's testamentary instruments.  Thus, California has long protected spouses omitted from testamentary instruments in this circumstance.  Initially, California law provided for the *complete* revocation of any will or trust that pre-dated a marriage and did not provide for the omitted spouse. (*Estate of Piatt* (1943) 57 Cal.App.2d 211, 212.)  Since 1931,

6

however, California law has more modestly mandated a "*partial* revocation of [any] will [or trust] by operation of law" in order to provide the omitted spouse a share of the decedent's estate while simultaneously trying to preserve as much of the decedent's pre-marital estate plan as feasible. (*Estate of Stewart* (1968) 69 Cal.2d 296, 299-300, italics added; *Estate of Shimun* (1977) 67 Cal.App.3d 436, 441; §§ 21610, 21612.)

As codified in the Probate Code today, an omitted spouse—except in four statutorily enumerated circumstances not present here[6]—is entitled to a "share in the decedent's *estate*" consisting of (1) "one-half" of the decedent's community and quasi-community property, and (2) "[a] share of the [decedent's] separate property" "equal in value" to what the omitted spouse "would have received" had the decedent died intestate. (§ 21610, italics added.) The omitted spouse's share is to be drawn "first" from any portion of the decedent's estate "not disposed of by will or trust" (§ 21612, subd. (a)(1)); if that is "not sufficient," then the omitted spouse's share is to be "taken from all beneficiaries of

---

[6] An omitted spouse is not entitled to any share of the decedent's estate if (1) the decedent "intentional[ly]" omitted the spouse and that intent "appears from the testamentary instruments" (§ 21611, subd. (a)), (2) the decedent provided for the omitted spouse by a transfer "outside of the estate" (*id.*, subd. (b)), (3) the omitted spouse validly "waiv[ed]" their share (*id.*, subd. (c)), or (4) the couple were married for less than six months and the omitted spouse was the decedent's care custodian unless the omitted spouse "proves by clear and convincing evidence that the marriage . . . was not the product of fraud or undue influence" (*id.*, subd. (d)).

7

[the] decedent's testamentary instruments" "proportion[ately]." (*id.*, subd. (a)(2)).[7]

Critically, and as highlighted above, an omitted spouse's share is to be drawn solely from the decedent's "estate." For this purpose, the "estate" includes (1) the "decedent's probate estate" and (2) "all property held in" or "passing by" "any revocable trust that becomes irrevocable on the death of the decedent." (§§ 21601, subd. (b), 21600 [omitted spouse statutes apply only "to property passing by will through a decedent's estate or by a trust . . . that becomes irrevocable only on the death of the settlor"].) These definitions necessarily imply their converse: An omitted spouse's share is *not* to be drawn from (1) property that passes outside the decedent's "probate estate" and (2) property that does not pass through a revocable trust that becomes irrevocable upon the decedent's death.

II. **Analysis**

The trial court correctly declined to include the proceeds from Thomas's IRA in Pamela's omitted spouse share because those proceeds are not part of Thomas's "estate."

IRA proceeds are *not* part of a decedent's "probate estate." The Probate Code provides a nonexclusive list of several types of "transfers" of property upon a person's "death" that are "nonprobate transfers." (§ 5000, subd. (a); *Estate of Petersen* (1994) 28 Cal.App.4th 1742, 1751 [list is not exhaustive].) These nonprobate transfers need not "comply with the requirements for execution of a will" (§ 5000, subd. (a)), and more to the point, they

---

[7]    The probate court has some flexibility to "exempt[]" a "specific gift or devise" from this "apportionment" to avoid "defeat[ing]" "the obvious intention of the decedent in relation to [that specific] gift or devise." (§ 21612, subd. (b).)

effectuate the transfer of property, not under the law of probate, but instead under "[t]he terms of the instrument under which the nonprobate transfer is made" (§ 5011, subd. (a)). IRAs are explicitly listed as one of these nonprobate transfers (§ 5000, subd. (a)), and California law has long treated them as such. (*Estate of Davis*, *supra*, 171 Cal.App.3d at p. 858 ["The proceeds of [an IRA transfer] do not become a part of the [probate] estate"]; accord, *UBS Financial Services, Inc. v. Aliberti* (Mass. 2019) 133 N.E.3d 277, 283 ["IRAs are a type of 'nonprobate' asset, meaning that upon the death of the owner, title passes in accordance with a contractual beneficiary designation rather than under the provisions of a will"].) This makes sense, as IRAs are akin to innumerable other direct transfers of property upon death that occur outside of probate, such as transfers of bank account balances under so-called "Totten trusts" (*Estate of Allen*, *supra*, 12 Cal.App.4th at pp. 1764, 1766; §§ 80, 5132, subd. (c), 5302, subd. (c), 5304), transfers of property held in joint tenancy with a right of survivorship (*Estate of Hobart* (1947) 82 Cal.App.2d 502, 507), transfers of insurance proceeds (*Estate of Welfer* (1952) 110 Cal.App.2d 262, 265), and transfers of payments due under an annuity (*Estate of Petersen*, at p. 1753).

Although IRA proceeds *can* sometimes pass through a "trust that becomes irrevocable" upon death, such as when the designated beneficiary of the IRA is the decedent's trust (e.g., *Estate of Davis*, *supra*, 171 Cal.App.3d at p. 858), the IRA proceeds *in this case* never became part of the Trust for purposes of calculating Pamela's omitted spouse's share. It is undisputed that the IRA was held by Thomas in his individual capacity and *not* by the Trust; indeed, federal law governing IRAs *prohibits* trusts from holding an IRA (26 U.S.C. § 408(a) [IRA defined as "a

9

trust created or organized . . . for the exclusive benefit of an individual or his beneficiaries"]).  It is also undisputed that Thomas designated the *separate trusts* for Shannon and Leah as the beneficiaries of the IRA's proceeds rather than the Trust itself.  Thus, the IRA proceeds in this case at no point ever passed *through* the Trust.

Pamela resists this analysis with what boils down to five arguments.

First, she argues that the IRA proceeds *did* pass through the Trust—and thus are part of Thomas's "estate" for purposes of calculating her omitted share—because the beneficiaries of the proceeds are the "sub-trusts" for Shannon and Leah (rather than Shannon and Leah as individuals), and because those "sub-trusts" were *created* in the Trust.  We reject these arguments.  To begin, Pamela's characterization of the trusts created for Shannon and Leah as "sub-trusts" is misleadingly inaccurate; the Trust itself labels them "*separate* trust[s]."  (Italics added.) (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949 [""Where the terms of [the instrument] are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby""]; §§ 21102, 21120, 21122 [rules of construction of trust instruments].)  If Thomas had created those separate trusts in documents independent of the Trust, there is no question—under the law set forth above—that the IRA proceeds would pass directly from the IRA into those independently created separate trusts, and thus completely outside of the Trust (and hence completely outside of Thomas's "estate").  We see no reason why Thomas's decision to kill two birds with one stone by creating the separate trusts in the Trust document itself should lead to a

10

different result when the IRA proceeds are *still* passing directly from the IRA to those separate trusts—and, importantly, not *through* the Trust. Nor does it matter that the beneficiaries are the separate trusts for Shannon and Leah rather than Shannon and Leah as individuals; in either event, the proceeds are not passing through the Trust.

Second, Pamela cites section 21610 as well as *Katleman*, *supra*, 13 Cal.App.4th at p. 64, and *Stewart*, *supra*, 69 Cal.2d at p. 299, for the proposition that an omitted spouse's share of a decedent's separate property is defined by what that spouse "would have received if the decedent had died without having executed [the] testamentary instrument" at issue. Pamela then goes on to argue that, had Thomas not executed the Trust, then the separate trusts for Shannon and Leah would not have been created by that Trust and the IRA's beneficiary designation would be a nullity (because it designates those separate trusts as the beneficiaries), such that the IRA must necessarily pour into Thomas's estate. We reject this argument. The "what would have happened" test is meant to define the omitted spouse's share—not, as Pamela urges, to determine whether property is part of the estate in the first instance. More to the point, the whole purpose of probate law is to effectuate the decedent's intent: Here, Thomas's intent to designate the separate trusts for Shannon and Leah as the beneficiaries of his IRA is crystal clear; we decline to import a test developed in one context into a different context in order to defeat that intent. (*Katleman*, at p. 64 ["It is, of course, a cardinal rule of construction that a testator's intent, as manifested by the terms of the [testamentary instrument and other documents] must be given effect, and

11

technical rules of construction must yield to an intention clearly expressed"].)

Third, Pamela argues that the separate trusts became irrevocable upon Thomas's death, such that the IRA proceeds are "held in" or "pass[] by" a "revocable trust that becomes irrevocable on the death of the decedent" (and thus are part of Thomas's "estate"). (§§ 21600, 21601, subd. (b).) Although the separate trusts ostensibly came into being and thus become irrevocable upon Thomas's death and although the IRA proceeds undoubtedly are held in those separate trusts, the IRA proceeds never pass through *the Trust itself*. Because only the decedent's testamentary instruments are subject to the omitted spouse's share (§ 21610), and because only the Trust is Thomas's testamentary instrument, whether or not the separate trusts became irrevocable upon Thomas's death is irrelevant.

Fourth, Pamela argues the various provisions of the Trust addressing IRA proceeds indicate that any such proceeds are passing through the Trust. To be sure, Pamela is correct that a decedent *can* pass assets such as IRA proceeds through a trust (which would make them part of the decedent's "estate"), and that the key is whether the decedent so intended. (Cf. *Placencia v. Strazicich* (2019) 42 Cal.App.5th 730, 734-735 [express intent in estate plan can overcome nonprobate character of asset]; *Brown v. Labow* (2007) 157 Cal.App.4th 795, 812 ["paramount rule in construing" trust instrument is determining "intent from the instrument itself"].) Yet Thomas has evinced no such intent here. The Trust contains instructions for distributing IRAs and some of those instructions are located in the provisions describing the two separate trusts, but those instructions deal with how the trustees *of those separate trusts* are to distribute the proceeds for

12

tax purposes; they do not deal with the Trust at all. (Italics added.) The Trust also provides that "[i]f any trust created hereunder is the beneficiary of any IRA . . . , initially all of such IRA shall be allocated to and treated as principal *of such trust* for trust accounting and distribution purposes" (italics added), but this provision applies in this case only to the separate trusts because only the separate trusts are the beneficiaries of the IRA.

Fifth and finally, Pamela argues that the probate court's ruling on demurrer is controlling and precluded the court from coming to a different conclusion when ruling on Pamela's second two petitions. She cites no authority in support of her argument, and for good reason: Demurrer rulings are not binding on a different judge making later rulings on the merits. (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1063 ["It should go without saying that a ruling which erroneously overrules a demurrer is not binding on anyone"]; *Wrightson v. Dougherty* (1936) 5 Cal.2d 257, 265 [same].)

## DISPOSITION

The orders are affirmed. The trustees are entitled to costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.
HOFFSTADT

13

We concur:

_____, P. J.
 LUI


_____, J.
 CHAVEZ